UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
KARINA BIBICHEFF,

                           Plaintiff,                   **MEMORANDUM AND ORDER**
                                                                     2:17-cv-4679 (DRH)(AYS)

   - against -

CHASE BANK USA, N.A., PAYPAL, INC.,

                           Defendants.
---------------------------------------------------------X

**APPEARANCES**

**GISKAN, SOLOTAROFF & ANDERSON LLP**
Attorney for Plaintiff
217 Centre Street, 6th Floor
New York, NY 10013
By:    Oren Giskan, Esq.

**COVINGTON & BURLING LLP**
Attorneys for Defendant Chase Bank USA, N.A.
850 Tenth Street NW
Washington, DC 20001
By:    Andrew Soukup, Esq.
         Kathryn Cahoy, Esq.

**HOLLAND & KNIGHT LLP**
Attorney for Defendant Paypal, Inc.
31 West 52nd Street
New York, NY 10019
By:    Christine Walz, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Karina Bibicheff ("Plaintiff") brought this action against Defendants Chase Bank USA, N.A. ("Chase") and Paypal, Inc. ("Paypal"), asserting violations of the Truth in Lending Act ("TILA"), negligence, breach of the implied covenant of good faith and fair dealing, and failure to protect her from unauthorized transactions pursuant to New York General

Business Law § 349.  Presently before the Court is Chase's motion to dismiss pursuant to Fed. R. Civ. P ("Rule") 12(b)(6) for failure to state a claim.  For the reasons discussed below, Chase's motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following relevant facts come from the Complaint and are assumed true for purposes of this motion.

Plaintiff owns and operates a "medical spa" in Old Brookville, New York.  (Compl. [DE 1] ¶ 8.)  At all relevant times Plaintiff was a holder of two credit cards issued by Chase, a "Slate" card and an "Ink" card.  (*Id.* ¶ 12.)  On or about August 25, 2016, Plaintiff noticed numerous unauthorized charges on both her Slate and Ink accounts.  (*Id.* ¶13.)  The unauthorized transactions on the Slate card spanned from June 2014 through August 2016 and totaled $55,805.94.  (*Id.* ¶ 14.)  Of this total, $50,385.73 was used for unauthorized transactions through a Paypal account ("Fraudulent PayPal Account") that the alleged identity thief created in Plaintiff's name without her knowledge or consent.  (*Id.*)  The remaining amount was used for unauthorized transactions through Plaintiff's properly created Staples account ("Staples Account").  (*Id.*)  The unauthorized transactions on the Ink card spanned from November 2015 through August 23, 2016, and totaled $79,669.32.  (*Id.* ¶ 15.)  Of this amount, $76,260.73 was used for unauthorized transactions through the Fraudulent PayPal Account. (*Id.*)  The remaining $3,408.59 was used for unauthorized purchases through Plaintiff's Staples Account.  (*Id.*)

Plaintiff was not aware of the fraudulent nature of these charges until August 2016, when she received the results of her business audit for the year 2015.  (*Id.* ¶ 16.)  Plaintiff does not explain why she did not catch the fraudulent charges from June 2014 through December 2014 on the 2014 business audit.  Plaintiff claims that the identity thief entered a wrong billing address

for a number of the unauthorized transactions conducted in July 2016 through the Staples Account, but Chase did not block or flag these charges. (*Id.* ¶ 18.) Plaintiff suspects that her former office manager was the one who stole her credit card information and was responsible for the unauthorized transactions. (*Id.* ¶ 19.)

In August 2016, Plaintiff informed Chase about the unauthorized transactions, and Chase credited her accounts for a portion of the charges. (*Id.* ¶ 23.) On September 9, 2016, Plaintiff filed a police report regarding the charges. (*Id.* ¶ 21.) Plaintiff provided Chase with a copy of the police report in October 2016. (*Id.* ¶ 22.) In November 2016, Chase reversed its August 2016 decision, and removed the credits from Plaintiff's account. (*Id.* ¶ 24.) Plaintiff received a letter in January 2017, stating that Chase had found Plaintiff was liable for the charges because she had confirmed that she "provided [her[ office manager . . . with access to [her] personal information." (*Id.* (quoting Letter from Chase to Plaintiff (Jan. 5, 2017) (hereinafter "Jan. 2017 Letter").) Additionally, Chase explained that the "charges from PayPal and Staples Direct were for office and medical supplies" and, therefore, Plaintiff's "company benefitted from the activity." (*Id.* ¶ 25.) Plaintiff contests Chase's conclusions, and claims that she does not know what goods or services were purchased but at least some of them seem to have been gifts to an unnamed recipient. (*Id.* ¶ 27.)

## DISCUSSION

### I.   The Parties' Arguments

Plaintiff brings four causes of action against Chase: (1) violations of the TILA for holding Plaintiff liable for unauthorized charges in excess of $50.00; (2) negligent failure to discover and notify Plaintiff of the suspicious charges on her account; (3) declaratory judgment under the TILA that Plaintiff is not liable for any of the unauthorized charges in excess of

$50.00; and (4) breach of the implied covenant of good faith and fair dealing for failing to investigate the unauthorized charges that Plaintiff reported to Defendant. (*Id.* ¶¶ 34–50.)

In Chase's motion papers, Chase argues that both claims under the TILA are foreclosed by Second Circuit precedent. (Mem. in Supp. [DE 28-1] at 1.) Additionally, Chase avers that Plaintiff's negligence claim is barred by New York's economic loss rule. (*Id.*) Finally, Chase asserts that Plaintiff's claim for breach of the implied covenant of good faith and fair dealings is foreclosed by the express terms of Plaintiff's cardholder agreements. (*Id.* at 2.)

## II. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

   III.    Truth in Lending Act Claims

      a.  TILA

TILA § 1643(a)(1) provides that a cardholder shall be liable for the unauthorized use of a credit card only if:

> (A) The card is an accepted credit card; (B) the liability is not in excess of $50; (C) the card issuer gives adequate notice to the cardholder of the potential liability; (D) the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card . . . ; (E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise; and (F) the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it.

The TILA defines "unauthorized use" for purposes of § 1643 as "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C. § 1602(p).

"Apparent authority consists of 'that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses . . . .'" *Landtek Group, Inc. v. North American Specialty Flooring, Inc.*, 2016 WL 11264722, at *10 (E.D.N.Y. Aug. 12, 2016) (citing *In re Nigeria Charter Flights Contract Litigation*, 520 F. Supp. 2d 447, 463 (E.D.N.Y. 2007)). Apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." *Minskoff v. American Express Travel Related Svcs. Co., Inc.*,98 F.3d 703, 708 (2d Cir. 1996) (quoting *Restatement (Second) of Agency* § 27 (1958); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)) (internal quotation marks omitted). Thus, in evaluating apparent authority the Court must look to how the third party interprets the words and conduct of the principal. *See id.*

"The existence of apparent authority is normally a question of fact, and thus inappropriate for resolution on summary judgment, much less on a motion to dismiss." *Volovnik v. Benzel-Busch Motor Car Corp.*, 2010 WL 3629819, at *8 (S.D.N.Y. July 29, 2010) (quoting *Minskoff*, 98 F.3d at 708)) (internal quotation marks and citations omitted). A question of apparent authority may "be resolved as a matter of law [ ] if: (1) the facts are undisputed; or (2) there is but one way for a reasonable jury to interpret them." *Landtek*, 2016 WL 11264722, at *11 (quoting *Gen. Overseas Films, Ltd. v. Robin Int'l, Inc.*, 542 F. Supp. 684, 689 (S.D.N.Y. 1982), *aff'd*, 718 F.2d 1085 (2d Cir. 1983)).

    b.  The Motion to Dismiss Plaintiff's TILA Claims is Denied

The question before the Court on this motion to dismiss is whether the unauthorized charges on Plaintiff's Slate and Ink Cards are cloaked with apparent authority such that Plaintiff

is liable for them. As discussed above, the question of apparent authority is one of fact, which is particularly inappropriate on a motion to dismiss. *See Volovnik*, 2010 WL 3629819, at *8; *Minskoff*, 98 F.3d at 708. Here, there are certain key facts in dispute regarding whether Plaintiff reviewed her monthly statements, and if she did, whether Plaintiff should have known from the information on those statements that the charges in question were fraudulent. As such, the Court cannot say at this time that there is "but one way for a reasonable jury to interpret" the charges. *See Landtek*, 2016 WL 11264722, at *11.

Chase's argument that the TILA does not establish a cause of action for Plaintiff to be reimbursed for fraudulent charges that she has already paid is similarly unavailing. In support of this assertion, Chase only cites two cases, neither of which are binding authority on this Court and neither of which have ever even been cited in this Circuit. (*See* Mem. in Supp. at 7 (citing *Azur v. Chase Bank, USA, N.A.*, 601 F.3d 212 (3d Cir. 2010); *Grant v. First Premier Bank*, 2017 WL 2807496, at *4 (D. Kan. June 29, 2017)). "The Second Circuit . . . has not decided whether section 1643 obligates card issuers to reimburse its cardholders' accounts, and thus whether cardholders can maintain a cause of action against cards issuers under section 1643." *Volovnik*, 2010 WL 3629819, at *5 (citing *Towers World Airways Inc. v. PHH Aviation Systems Inc.*, 933 F.2d 174 (2d Cir. 1991); *Minskoff*, 98 F.2d at 709.) As there are outstanding questions of both law and fact, Chase's motion to dismiss Plaintiff's TILA claims is denied.

    IV.   *Negligence Claim*

        a.  Negligence

"To sustain a cause of action for negligence under New York law, a plaintiff must prove that (1) defendant owed plaintiff a duty of care; (2) defendant breached this duty; (3) plaintiff suffered an injury; and (4) defendant's breach was the direct and proximate cause of the injury."

*Paul v. Bank of America Corp.*, 2011 WL 684083, at *3 (E.D.N.Y. Feb. 16, 2011) (citing *Colorado Capital v. Owens*, 227 F.R.D. 181, 187 (E.D.N.Y. 2005)). "There is a longstanding New York rule, however, that economic loss is not recoverable under a theory of negligence." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007) (citing *Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F. Supp. 2d 265, 285 (S.D.N.Y. 2001)). Thus, if a plaintiff does not allege "personal injury or property damage" and her allegations are "purely limited to economic loss . . . her remedies are limited and she may not sue in negligence." *Id.*; *see also Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (under New York law, "a plaintiff who has suffered economic loss, but not personal or property injury, may not recover in tort if the damages are the type remedial in contract"). Even in a products liability scenario, "tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury is not alleged or at issue." *In re Lyman Good Dietary Supplements Litigation*, 2018 WL 3733949, at *9 (S.D.N.Y. Aug. 6, 2018) (quoting *N.Y. Methodist Hosp. v. Carrier Corp.*, 68 A.D.3d 830, 831 (N.Y. App. Div. 2009)).

      b.   The Motion to Dismiss Plaintiff's Negligence Claim is Granted

Here, Plaintiff has only alleged economic loss, not personal injury or property damage. Plaintiff attempts to circumvent the limitations of the economic loss doctrine by arguing that it is only applicable to "claims arising out [of] defective products." (Mem. in Opp. [DE 28-5] at 11.) This argument is inapposite, as the "economic loss" rule applies to negligence claims in New York more broadly. *See Labajo*, 478 F. Supp. 2d at 532 (explaining that "economic loss is not recoverable under a theory of negligence" and going on to dismiss a negligence claim brought against a store for false charges on her credit card); *BNP Paribas Mortg. Corp. v. Bank of*

*America, N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013) (dismissing a negligence claim against a bank for fraudulently diverting a subsidiary's assets related to $1.6 billion of short-term notes issued by a residential mortgage lender). As Plaintiff is attempting to "improperly convert contract claims into tort claims . . . a tort action for economic loss will not lie." *BNP Paribas*, 949 F. Supp. 2d at 505 (quoting *In re Adelphia Comm. Corp.*, 2007 WL 2403553, at *9 (Bankr. S.D.N.Y. Aug. 17, 2007)) (internal citations omitted). Accordingly, Plaintiff's negligence claim is dismissed.

    V.    *Breach of Implied Covenant of Good Faith and Fair Dealing Claim*

        a.    Implied Covenant of Good Faith and Fair Dealing

"Under New York law, 'implicit in every contract is a covenant of good faith and fair dealing . . . which encompasses any promises that a reasonable promisee would understand to be included.'" *Spinelli v. Nat'l Football League*, 2018 WL 4309351, at *13 (2d Cir. Sept. 11, 2018) (quoting *New York Univ. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)). "'[N]either party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract' or to violate the party's 'presumed intentions or reasonable expectations.'" *Spinelli*, 2018 WL 4309351, at *13 (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)). To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff "must provide facts which tend to show that [the defendant] sought to prevent performance of the contract or to withhold its benefit from [the plaintiff]." *CIT Bank, N.A. v. Nwanganga*, 2018 WL 4372721, at *8 (S.D.N.Y. Sept. 13, 2018) (quoting *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 265 A.D.2d 513 (1999)) (internal quotation marks omitted). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Spinelli*,

2018 WL 4309351, at *13 (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011)). For an action to be "arbitrary" it must be "without sound basis in reason and []generally taken without regard to the facts." *Toledo Fund, LLC v. HSBC Bank USA, Nat. Ass'n*, 2012 WL 2850997, at *6 (S.D.N.Y. July 9, 2012) (quoting *Doe v. Nat'l Bd. of Podiatric Med. Exam'rs*, 2005 WL 352137, at *10 (S.D.N.Y. Feb. 15, 2005)).

> b. The Motion to Dismiss Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim is Granted

Plaintiff claims that Chase violated the covenant of good faith and fair dealing by failing "to investigate in good faith the unauthorized charges Plaintiff reported to Chase." (Compl. ¶ 49.) As the investigation is a discretionary act, the question is whether Chase acted arbitrarily or irrationally. *See Spinelli*, 2018 WL 4309351, at *13. The only allegations Plaintiff sets forth regarding Chase's investigation are as follows: Plaintiff reported the theft in August 2016, at which time Chase issued her a refund for certain of the charges; Chase then conducted an investigation between August 2016 and November 2016 of the unauthorized charges; on the basis of that inquiry, Chase reversed its earlier decision to reimburse Plaintiff. (Compl. ¶ 24.) Additionally, Plaintiff alleges that Chase wrongly determined that the charges were for office and medical supplies. (*Id.* ¶ 25.) Finally, Plaintiff states that Chase informed her "that if she wished to continue the dispute, Chase need[ed] 'supporting documentation such as a police report.'" (*Id.* ¶ 28 (quoting Jan. 2017 Letter)). Plaintiff takes issue with: (1) Chase's conclusion that the charges were for office and medical supplies, when she claims that at least certain of the charges were for gifts; and (2) that Chase asked for a copy of the police report when she had allegedly sent it several months prior. (*See id.* ¶¶ 26–29.)

While Chase's misinterpretation of certain charges and alleged misplacement of the police report are understandably frustrating, these actions do not rise to the level of being

arbitrary or irrational. *See Spinelli*, 2018 WL 4309351, at *13. *See id.* (finding the defendants' actions arbitrary and irrational such that they breached the implied covenant of good faith and fair dealing when one defendant granted the other "complimentary and unfettered use of thousands of plaintiff's photographs, and in doing so sought (unsuccessfully) to excuse thousands of completed acts of copyright infringement") ; *see also Fishoff*, 634 F.3d at 653 (finding the defendant's actions arbitrary and irrational such that they breached the implied covenant of good faith and fair dealing when the defendant cut its share price by 50% to devalue plaintiff's stock options, in addition to conducting an unjustified post hoc valuation that applied only to the plaintiff's options and only after the plaintiff exercised certain of those options).

Moreover, Plaintiff has not alleged any facts "which tend to show that [the defendant] sought to prevent performance of the contract or to withhold its benefit from [the plaintiff]." *CIT Bank, N.A.*, 2018 WL 4372721, at *8. Chase's obligation under the contract was to investigate the charges. Plaintiff's own telling of the events suggests that Chase conducted such an investigation given that Chase initially reimbursed the charges in August, then reversed the charges in November, and then sent a detailed letter in January explaining the rationale for its decision and providing Plaintiff with options to continue or reopen the investigation. (*See* Compl. ¶¶ 23–29.) As such, Plaintiff has not stated a claim for a breach of the implied covenant of fair dealing, and Chase's motion to dismiss is granted.

## CONCLUSION

For the foregoing reasons, Chase's motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part. Chase's motion is granted as to Plaintiff's claims for negligence and

breach of the implied covenant of good faith and fair dealing.  Chase's motion is denied as to Plaintiff's TILA claims.

**SO ORDERED.**

Dated: Central Islip, New York
September 26, 2018

                                                        /s/
                                        Denis R. Hurley
                                        Unites States District Judge